STATE OF CONNECTICUT *v.* RICHARD O. BLAKE

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

100

Argued October 4—decided October 23, 1968

*Jerrold H. Barnett,* special public defender, for the appellant (defendant).

*David B. Salzman,* assistant state's attorney, with whom, on the brief, were *George R. Tiernan,* state's attorney, *Richard P. Sperandeo* and *Robert K. Walsh,* assistant state's attorneys, for the appellee (state).

KING, C. J. The defendant was convicted in a trial to the jury on one count charging indecent assault (General Statutes § 53-217) and two counts charging the commission of acts likely to impair the morals of a minor child. General Statutes § 53-21. From the judgment of guilty he takes this appeal.

(a)

The state claimed that the defendant indulged in misconduct with Mikey Citak, who, at the time of

the trial, was a boy of nine, and with John Briers, who, at the time of the trial, was a boy of eleven.

Soon after the defendant's arrest, the father of the Citak boy telephoned the defendant and asked to talk to him. The defendant promptly communicated this request to Attorney William H. Regan, who was then representing him, and shortly thereafter a meeting was arranged between Theodore Citak, Sr., the defendant and Attorney Regan, at the latter's office.

On the third day of the trial, which was a Thursday, one of the state's witnesses was Citak, Sr., who testified, in effect, that his son told him of the defendant's misconduct. See cases such as *State* v. *Segerberg*, 131 Conn. 546, 549, 41 A.2d 101. Two other witnesses thereafter testified for the state, and the defense opened its case and examined two witnesses. On the fourth day, Friday, three more witnesses testified for the defendant, and the direct examination of the defendant, who chose to take the stand, was completed. The trial was then adjourned until the following Wednesday, when the cross-examination of the defendant was concluded. Thereafter, Attorney Charles G. Albom, who conducted the trial, moved to permit Attorney Regan to withdraw as counsel and to testify regarding certain statements claimed to have been made by Citak, Sr.

A conference in chambers ensued. Neither the claims made nor the court's views as to those claims, as they developed in the conference, were formalized in the record, except that the court stated that defense counsel had made the motion because of claimed surprise by the direct testimony which Citak, Sr., had given on Thursday of the previous week as to the conversation in Attorney Regan's office. The court denied the motion on the ground

that counsel could not reasonably claim surprise. Prior to the motion to withdraw, Attorney Regan had participated in the trial by sitting at the counsel table with Attorney Albom and consulting with him, but the latter, alone, had examined the witnesses.

Number 19 of the Canons of Professional Ethics (Practice Book, p. 8), reads as follows: "When a lawyer is a witness for his client, except as to merely formal matters, such as the attestation or custody of an instrument and the like, he should leave the trial of the case to other counsel. Except when essential to the ends of justice, a lawyer should avoid testifying in court in behalf of his client."

This does not disqualify or render incompetent, as a witness, an attorney who has participated in a trial, and it is error to refuse to permit him to offer himself as a witness. *Lebowitz* v. *McPike,* 151 Conn. 566, 570, 201 A.2d 469; *Miller* v. *Urban,* 123 Conn. 331, 334, 195 A. 193; *Sengenbush* v. *Edgerton,* 120 Conn. 367, 370, 180 A. 694; *Erwin M. Jennings Co.* v. *DiGenova,* 107 Conn. 491, 497, 141 A. 866.

Although it is error to refuse to permit an attorney to testify as a witness, even though he is participating in the trial and remains in the case, it is, however, a violation of Canon 19 and a serious impropriety for him so to do except (1) as to merely formal matters or (2) where the necessity for his testifying arises from an emergency the likelihood of which could not reasonably have been anticipated in time for him to withdraw from the case before trial. See *Erwin M. Jennings Co.* v. *DiGenova,* supra.

Here, however, the attorney asked to withdraw from the case before taking the stand as a witness, and this withdrawal was quite feasible since he had not actively participated in the examination of the

witnesses and the progress of the trial would not have been impeded. Thus, the present case differed from a situation in which an attorney offers himself as a witness while remaining in the case.

The proper course, in a situation such as this, would be for the attorney to withdraw from the case as soon as it became reasonably foreseeable that his testimony on a material matter might be likely to be required. On this record, it is not clear that any necessity for the testimony of Attorney Regan would have been reasonably foreseeable until the direct testimony of Citak, Sr., on Thursday. Although it is not entirely clear, the court seems to have felt that the motion to withdraw was unduly delayed.

Our rule refusing to hold an attorney incompetent as a witness, even if his conduct as a witness is an unethical violation of Canon 19, is based on the ground that the interests of the client should not be jeopardized in order to discipline his attorney. See *Erwin M. Jennings Co.* v. *DiGenova,* supra, 500. Ours is the general rule. 6 Wigmore, Evidence (3d Ed.) § 1911, p. 595; 97 C.J.S., Witnesses, § 71.

The court was in error in refusing to permit the withdrawal of Attorney Regan from the case and also in holding, in effect, that he was incompetent as a witness.

### (b)

Since there must be a new trial, we consider one other claim of error which is likely to arise on the retrial.

The defendant chose to put his character in issue as he is permitted to do. *State* v. *McGuire,* 84 Conn. 470, 485, 80 A. 761; 1 Wigmore, op. cit. § 56, p. 450; McCormick, Evidence § 158, p. 333. It is not, how-

ever, his general good character which he may put in issue but only such specific traits of his character as are involved in the crime or crimes as charged. *State* v. *Campbell,* 93 Conn. 3, 10, 104 A. 653. This view seems to be in accord with the general rule. 1 Wharton, Criminal Evidence (12th Ed.) § 221, p. 459; 29 Am. Jur. 2d, Evidence, § 346; 1 Wigmore, op. cit. § 59, p. 458; McCormick, op. cit. § 158, p. 334. In this case, the specific traits involved would be sexual morality and decency.

The reason for the admission of such character evidence is not because a person of previous good character for sexual morality and decency might not, or could not, in a given situation, commit a crime such as that charged, but because it is less probable that he would commit such a crime than if he had previously had a bad character with respect to such traits. *State* v. *McGuire,* supra.

The classic method of proving a trait of character is by proof of general reputation in the community as to that trait, and this evidence may be elicited from those who have had an opportunity to know, and do know, of that reputation. In other words, although the fact in issue is the actual character of the accused, it may be proved indirectly by evidence of his reputation as to his character in the community. Character or disposition is an attribute actually possessed, while reputation represents the community's belief as to the actual character or disposition. 5 Wigmore, op. cit. §§ 1608–1610; 7 id. § 1981e, p. 145; 1 id. § 52, pp. 446, 447.

Connecticut, in *Richmond* v. *Norwich,* 96 Conn. 582, 593, 115 A. 11, adopted the better, although probably still the minority, rule that character may also be proved by the opinion evidence of those who have been shown to have had an opportunity to

form, and who have formed, an opinion as to the character of the accused with respect to the trait or traits in issue. This rule is approved in 29 Am. Jur. 2d, Evidence, § 345; 7 Wigmore, op. cit. §§ 1980, 1981; McCormick, op. cit. § 158, p. 334 n.9. The whole question was elaborately discussed in the *Richmond* case and its holding is equally applicable whether the character is to be proved in a civil or a criminal case.[1] The shortcomings of the classic rule restricting proof of character to proof of reputation are recognized, although the rule seems to have been followed, in *Michelson* v. *United States,* 335 U.S. 469, 477, 69 S. Ct. 213, 93 L. Ed. 168.

In the instant case, the inquiry was as to the witness' opinion of the "character" of the defendant. Since the question related to general character, as distinguished from the specific trait or traits of character involved in the crimes charged, the question was inadmissible under the rule of *State* v. *Campbell,* 93 Conn. 3, 10, 104 A. 653, and the court correctly excluded it.

### (c)

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.

---

[1] Interestingly enough, as pointed out in *Richmond* v. *Norwich,* 96 Conn. 582, 596, 115 A. 11, the rule restricting proof of character to evidence of reputation has not been applied when the character in issue was that of an animal other than a human being.